Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000314
21-MAR-2016
08:16 AM

NOS. CAAP-13-0000314 and CAAP-12-0001065

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

CAAP-13-0000314

LANAIANS FOR SENSIBLE GROWTH, Appellant-Appellee,
v.
LANAI RESORTS, LLC, Appellee-Appellant,
and
LAND USE COMMISSION; RANSOM A.K. PILTZ, in this official
capacity as Chairperson of the STATE OF HAWAII LAND USE
COMMISSION; VLADIMIR P. DEVENS, REUBEN S.F. WONG,
KYLE CHOCK, THOMAS CONTRADES, LISA M. JUDGE, DUANE KANUHA,
NORMAND R. LEZY, and NICHOLAS W. TEVES, JR.,
in their official capacities as members of the LAND USE
COMMISSION; COUNTY OF MAUI PLANNING DEPARTMENT;
STATE OFFICE OF PLANNING, Appellees-Appellees

CAAP-12-0001065

LANAIANS FOR SENSIBLE GROWTH, Appellant-Appellee,
v.
LANAI RESORTS, LLC, Appellee-Appellant,
and
LAND USE COMMISSION; RANSOM A.K. PILTZ, in this official
capacity as Chairperson of the STATE OF HAWAII LAND USE
COMMISSION; VLADIMIR P. DEVENS, REUBEN S.F. WONG,
KYLE CHOCK, THOMAS CONTRADES, LISA M. JUDGE, DUANE KANUHA,
NORMAND R. LEZY, and NICHOLAS W. TEVES, JR.,
in their official capacities as members of the LAND USE
COMMISSION; CASTLE AND COOKE RESORTS, INC.;
COUNTY OF MAUI PLANNING DEPARTMENT;
STATE OFFICE OF PLANNING, Appellees-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 10-1-0415)

MEMORANDUM OPINION
(By:  Foley, Presiding J., Fujise and Leonard, JJ.)

Appellee-Appellant Lanai Resorts, LLC[1] (**Lanai Resorts**) appeals from the Final Judgment entered on March 19, 2013 in the Circuit Court of the First Circuit[2] (**circuit court**).

On appeal, Lanai Resorts contends the circuit court erred in: (1) upholding the decision of the Land Use Commission (**LUC**) finding there was insufficient evidence to support its 1996 Cease and Desist Order; (2) invalidating the LUC's grant of Lanai Resorts' Motion for Modification of Condition No. 10; and (3) denying Lanai Resort's Motion to Dismiss the Appeal.

## I.  BACKGROUND

In 1989, Lanai Resorts filed a petition with the LUC for an amendment to the existing land use district boundary for a reclassification of a parcel of land in order to develop a golf course.

The LUC granted Lanai Resorts' petition on April 16, 1991 (**1991 Order**), subject to twenty-three conditions.  Condition number ten (**Condition No. 10**) stated, "[Lanai Resorts] shall not utilize the potable water from the high-level groundwater aquifer for golf course irrigation use, and shall instead develop and utilize only alternative non-potable sources of water (e.g., brackish water, reclaimed sewage effluent) for golf course irrigation requirements."

In 1993, the LUC ordered Lanai Resorts to show cause why the land at issue should not revert to its former land use classification or be changed to a more appropriate classification on the basis that the LUC had reason to believe Lanai Resorts

_____

[1]  The Petitioner-Appellee-Appellant's name has changed throughout the proceedings, from Castle & Cooke Resorts, LLC; Lanai Company, Inc.; Lāna'i Resort Partners; to the current Lanai Resorts, LLC.  For clarity, we refer to it by the current successor in interest, Lanai Resorts.

[2]  The Honorable Karl K. Sakamoto presided.

2

failed to perform according to Condition No. 10 of the 1991 Order.

On May 17, 1996, the LUC issued its "Findings of Fact, Conclusions of Law, and Decision and Order" (**1996 Order**), which ordered Lanai Resorts to comply with Condition No. 10, finding that Lanai Resorts had failed to perform according to the condition. The 1996 Order was appealed to the Hawai'i Supreme Court. Lanai Co. v. Land Use Comm'n, 105 Hawai'i 296, 305-06, 97 P.3d 372, 381-82 (2004).

In 2004, the supreme court remanded this case to the circuit court with instructions to remand to the LUC "for clarification of its findings and conclusions, or for further hearings if necessary" on "the issue of whether [Lanai Resorts] has violated Condition No. 10 by utilizing potable water from the high level aquifer." Lanai Co., 105 Hawai'i at 316, 97 P.3d at 392.

On May 26, 2006, the LUC issued its "Second Prehearing Order on Remand From the Hawaii Supreme Court of the [LUC's] Findings of Fact, Conclusions of Law, and Decision and Order Dated May 17, 1996" (**Second Prehearing Order**), which ordered the parties to prepare to address a number of issues in hearings to be held on June 7-9, 2006. The issues the LUC directed the parties to address at the hearing were:

> 1. Does Condition No. 10 of the LUC's Findings of Fact, Conclusions of Law, and Decision and Order filed April 16, 1991 restrict [Lanai Resorts'] utilization of water for golf course irrigation use to alternative non-potable sources of water that [Lanai Resorts] develops?
>
>> (a) If so, what does "alternative non-potable sources of water (e.g., brackish water, reclaimed sewage effluent)" mean as used in Condition No. 10?
>>
>>> (i) What sources of water are encompassed by that term?
>>>
>>> (ii) Does this mean that the water must be from a source outside of the high-level groundwater aquifer?

3

(b)     If so, did [Lanai Resorts] develop and utilize alternative non-potable sources of water for golf course irrigation use?

2.      Did Condition No. 10 give fair warning to [Lanai Resorts] as to the sources of water that could and could not be used for golf course irrigation use?

3.      Did [Lanai Resorts] utilize potable water from the high-level groundwater aquifer?

The hearings were held on June 7 and 8, 2006. The LUC canceled the final day of the hearing for lack of quorum.

Each of the parties were invited to submit written testimony to the LUC at the June 2006 hearing, as well as a list of witnesses to be called. At the hearing, however, only Lanai Resorts, the County of Maui (**County**), and the State of Hawai'i Office of Planning (**OP**) were able to present live witness testimony to the LUC.

Lanai Resorts' witness list, which was submitted to the LUC before the hearing included Tom Nance of Tom Nance Water Resource Engineering; and Cliff Jamile, Ralph Masuda, and Harry Saunders of Castle & Cooke Resorts, LLC, the predecessor of Lanai Resorts. Tom Nance testified at the hearing, and was designated as an expert in hydrology and water resource engineering. Lanai Resorts also submitted exhibits as written testimony.

The County's witness list included Michael W. Foley, Director of Planning Department for the County (or his designee); George Y. Tengan, Director of Water Supply for the County (or his designee); and G. Riki Hokama, Council Chair of the Lana'i Residency Area. At the hearing, Ellen Kraftsow, the Water Resources and Planning Division Program Manager for the Department of Water Supply testified for the County. The County also submitted written testimony through exhibits to the LUC.

The OP's list of witnesses it expected to testify at the hearing included Laura H. Thielen, Director of OP and/or Abe E. Mitsuda, Division Head of the Land Use Division for the OP; Stuart Yamada, Clean Drinking Water Branch, Department of Health;

4

W. Roy Hardy, Regulation Branch Chief, Commission on Water Resource Management, Department of Land and Natural Resources; and an unidentified representative of the County's Department of Water Supply. W. Roy Hardy and Stuart Yamada testified at the hearing. The OP also submitted exhibits at the hearing.

The witness list for Intervenor-Appellant-Appellee Lanaians for Sensible Growth (**LSG**) included Rob McOmber, President of LSG; Reynold "Butch" Gima, Chairperson of Lanai Water Working Group; William Meyer, Private Consultant in Hydrology; and Michael Foley, Planning Director of the County. LSG submitted written exhibits at the hearing. Ron McOmber testified at the hearing, but testified as a citizen of Lāna'i and participant in the Lanai Water Advisory Committee, and not as the President of LSG or as LSG's witness.

On May 18, 2007, the LUC voted to allow a hearing officer to continue holding hearings and make a recommendation to the LUC. Commissioner Michael D. Formby (**Commissioner Formby**) suggested that the assignment of this case to a hearing officer "would allow for a more streamlined and efficient timeframe within which testimony and evidence could be collected . . . ." At this hearing, counsel for LSG reminded the LUC that it had heard all parties' testimony at the June 2006 hearing, except for testimony from LSG.

On July 16, 2007, Lanai Resorts filed a "Motion for Modification of Condition No. 10 and Dissolution of [the 1996 Order]" (**Motion for Modification**). On January 25, 2010, the LUC entered its "Order Vacating [1996 Order]; Denying Office of Planning's Revised Motion to Amend Findings of Fact, Conclusions of Law, and Decision and Order Filed April 16, 1991; and Granting [Lanai Resorts'] Motion for Modification of Condition No. 10, with Modifications" (**2010 Order**).

LSG appealed the 2010 Order to the circuit court and on November 8, 2012, the circuit court entered the "Order Vacating [LUC's] Order Vacating [1996 Order]; Denying [OP's] Revised Motion to Amend Findings of Fact, Conclusions of Law, and

Decision and Order Filed April 16, 1991; and Granting [Lanai Resorts'] Motion for Modification of Condition No. 10, with Modifications Entered January 25, 2010 and Remanding Matter to the [LUC]" (**November 2012 Order**) vacating the 2010 Order. The circuit court entered its Final Judgment on March 19, 2013. Lanai Resorts filed their notice of appeal on March 28, 2013.

## II.  STANDARD OF REVIEW

### A.  Ripeness/Subject Matter Jurisdiction

Ripeness is an issue of subject matter jurisdiction. Kapuwai v. City and Cty. of Honolulu, Dep't of Parks and Recreation, 121 Hawaiʻi 33, 39, 211 P.3d 750, 756 (2009). "Whether a court possesses subject matter jurisdiction is a question of law reviewable de novo." Id. (internal quotation marks and emphasis omitted) (quoting Kahoʻohanohano v. Dep't. of Human Servs., 117 Hawaiʻi 262, 281, 178 P.3d 538, 557 (2008)).

### B.  Standing

Standing is a question of law reviewable de novo. McDermott v. Ige, 135 Hawaiʻi 275, 282, 349 P.3d 382, 389 (2015) (citing Hawaii Med. Ass'n v. Hawaii Med Serv. Ass'n, 113 Hawaiʻi 77, 90, 148 P.3d 1179, 1192 (2006).

### C.  Secondary Appeals

"Review of a decision made by a court upon its review of an administrative decision is a secondary appeal. The standard of review is one in which [an appellate] court must determine whether the court was right or wrong in its decision." Brescia v. North Shore Ohana, 115 Hawaiʻi 477, 491, 168 P.3d 929, 943 (2007) (internal quotation marks omitted) (quoting Leslie v. Bd. of Appeals of Cty. of Hawaii, 109 Hawaiʻi 384, 391, 126 P.3d 1071, 1078 (2006)).

The standard of review that applies to the circuit court's review of an administrative proceeding is outlined in Hawaii Revised Statutes (**HRS**) § 91-14(g) (2012 Repl.), which states:

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the

substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

    (1)    In violation of constitutional or statutory provisions; or

    (2)    In excess of the statutory authority or jurisdiction of the agency; or

    (3)    Made upon unlawful procedure; or

    (4)    Affected by other error of law; or

    (5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

    (6)    Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Hou v. Bd. of Land & Nat. Res., 136 Hawaiʻi 376, 388, 363 P.3d 224, 236 (2015). "Further, under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6)." Hou, 136 Hawaiʻi at 388, 363 P.3d at 236 (brackets and internal quotation marks omitted) (quoting Bragg v. State Farm Mut. Auto. Ins. Co., 81 Hawaiʻi 302, 205, 916 P.2d 1203, 1206 (1996)).

    "'An agency's findings are not clearly erroneous and will be upheld if supported by reliable, probative and substantial evidence unless the reviewing court is left with a firm and definite conviction that a mistake has been made.'" Poe v. Hawaiʻi Labor Relations Bd., 105 Hawaiʻi 97, 100, 94 P.3d 652, 655 (2004) (quoting Kilauea Neighborhood Ass'n v. Land Use Comm'n, 7 Haw. App. 227, 229-30, 751 P.2d 1031, 1034 (1988)). "'The courts may freely review an agency's [COL].'" Lanai Co., 105 Hawaiʻi at 307, 97 P.3d at 383 (quoting Dole Hawaii Div.-Castle & Cooke, Inc. v. Ramil, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990) (other citation omitted)). "Abuse is apparent when the discretion exercised clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." Kimura v. Kamalo, 106 Hawaiʻi 501, 507, 107 P.3d 430, 436 (2005) (internal quotation marks and citation omitted).

Brescia, 115 Hawaiʻi at 491-92, 168 P.3d at 943-44 (brackets in original omitted).

## III. DISCUSSION

### A. Ripeness/Subject Matter Jurisdiction

As a preliminary matter, we address LSG's contention that this court lacks jurisdiction because the "remand order is clearly interlocutory." This court is required to determine if we have jurisdiction on each appeal. See Jenkins v. Cades Schutte Fleming & Wright, 76 Hawai'i 115, 119, 869 P.2d 1334, 1338 (1994).

LSG contends the circuit court's decision was a remand order, and thus not a "final order" under HRS § 91-14(a) (2012 Repl.).[3] In Gealon v. Keala, 60 Haw. 513, 591 P.2d 621 (1979), the Hawai'i Supreme Court held that a "'[f]inal order' means an order ending the proceedings, leaving nothing further to be accomplished. Consequently, an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action." Id. at 520, 591 P.2d at 626 (citing Downing v. Bd. of Zoning Appeals of Whitley Cty., 274 N.E.2d 542, 544 (Ind. App. 1971)).

LSG cites to the line of workers compensation cases in which appellate courts have held that they lack jurisdiction to review a decision the Labor and Industrial Relations Appeals Board (**LIRAB**) remanding the case to the director of the Department of Labor and Industrial Relations (**DLIR**) to determine the amount of compensation for a compensable injury. The supreme court in Bocalbos v. Kapiolani Med. Ctr. for Women & Children, 89

---

[3] HRS § 91-14(a) provides:

> **§91-14 Judicial review of contested cases.** (a) Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter; but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law. Notwithstanding any other provision of this chapter to the contrary, for the purposes of this section, the term "person aggrieved" shall include an agency that is a party to a contested case proceeding before that agency or another agency.

8

Hawai'i 436, 974 P.2d 1026 (1999) summarized the rule established by this line of cases: "a decision of the LIRAB in a workers' compensation case is not appealable under § 91-14(a) if a right of the claimant remains undetermined or if the case is retained for further action by the director of labor." Id. at 443, 974 P.2d at 1033.

The rule cited by LSG has been applied only in workers' compensation cases. The workers' compensation system is unique in that the LIRAB reviews decisions of the director of the DLIR, and can remand cases to the director for further determinations. See HRS § 386-87(c) (2015 Repl.) ("The appellate board shall have power to . . . remand the case to the director for further proceedings and action."). A decision by the LIRAB to remand the case to the director for a determination of compensation is not a "final order" under the definition provided in Gealon because a remand order from the LIRAB leaves further administrative action to be taken on the issue of the claimant's compensation benefits. See Mitchell v. State, Dep't of Educ., 77 Hawai'i 305, 307-08, 884 P.2d 368, 370-71 (1994).

LSG tries in its answering brief to equate the remand from the circuit court in this case to remand orders from the LIRAB in workers' compensation cases. Although both are remand orders, they are procedurally distinct. Judicial review by the circuit court is appropriate under HRS § 91-14(a) when an administrative agency has made a "final decision and order." A circuit court's remand directive is therefore irrelevant to the issue of whether there has been a "final order" under HRS § 91-14(a).

The 2010 Order by the LUC held that "there was insufficient evidence to support the Commission's 1996 Order finding a violation of Condition No. 10 and therefore the 1996 Order is hereby VACATED" and granted Lanai Resorts' Motion for Modification. Given the scope of the hearings as defined by the LUC, there were no more issues to be resolved or rights of a party to be determined following the 2010 Order. See Gealon, 60

Haw. at 520, 591 P.2d at 626. Therefore, this court has jurisdiction to hear this appeal and the appeal is ripe for our consideration.

## B. Standing

Lanai Resorts argues the circuit court erred in denying its motion to dismiss the appeal because LSG lacked the statutory authority to pursue the agency appeal under HRS § 414D-249(c)[4] (Supp. 2015) because LSG had been administratively dissolved in 2004 and was permitted under the statute to only carry on activities relating to "winding up."

In its opposition to Lanai Resorts' motion to dismiss, LSG maintained that it is the same entity that had administratively dissolved in 2004, although its name changed from "Lanaians for Sensible Growth" to "Lāna'ians for Sensible Growth."[5] In its answering brief, LSG argues that "[s]uch name changes produce no legal hurdle for continuing litigation, so long as the entities are merely carrying on the activities of its predecessor and carry the same rights and obligations from one entity to its successor-in- interest." However, the record shows that LSG did not merely go through a name change, but filed new articles of incorporation on November 14, 2008. Under HRS § 414D-249(f) (Supp. 2015),[6] LSG was permitted to amend its

---

[4] HRS § 414D-249(c) provides:

> **§414D-249 Procedure for and effect of administrative dissolution and effect of expiration.**
>
> . . . .
>
> (c) A corporation administratively dissolved continues its corporate existence but may not carry on any activities except those necessary to wind up and liquidate its affairs under section 414D-245 and notify its claimants under sections 414D-246 and 414D-247.

[5] The November 14, 2008 Articles of Incorporation listed LSG's name as "Lanaiians for Sensible Growth," but LSG filed Articles of Amendment to Change Corporate Name on March 22, 2010 to "Lāna'ians for Sensible Growth."

[6] LSG conceded in its opposition to Lanai Resorts' motion to dismiss that it "did not obtain reinstatement by December 14, 2006, the last day it could have done so" under HRS § 414D-249(f).

(continued...)

10

articles incorporation to "resume carrying on its activities as if the expiration had never occurred[,]" but must have done so within two years of dissolution. Lānaʻians for Sensible Growth did not attempt to resume corporate activities until four years had passed, and therefore had no statutory basis for carrying on its activities as the same entity prior to dissolution. At no point did Lānaʻians for Sensible Growth submit a motion pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 25(c)[7] or Hawaii Administrative Rules (**HAR**) § 15-15-71 (effective 2013)[8] to substitute in as the successor-in-interest to LSG. Lānaʻians for Sensible Growth, as a new corporation, is required to substitute in before it may replace LSG as a party.

LSG argues alternatively that it was entitled to continue litigating this case under HRS § 414D-245(b)(5) (2004

---

[6](...continued)

> The corporation, at any time within two years of the expiration of its period of duration, may amend its articles of incorporation to extend its period of duration and, upon the amendment, the corporation may resume carrying on its activities as if the expiration had never occurred; provided that if the name of the corporation, or a name substantially identical is registered or reserved by another entity, or if that name or a name substantially identical is registered as a trade name, trademark, or service mark, the extension of its period of duration shall be allowed only upon the registration of a new name by the corporation pursuant to the amendment provisions of this chapter.

HRS § 414D-249(f).

[7] HRCP Rule 25(c) provides:

> **Rule 25.** **SUBSTITUTION OF PARTIES**
>
> . . . .
>
> **(c) Transfer of interest.** In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule.

[8] HAR § 15-15-71 states:

> § 15-15-71 <u>Substitution of parties.</u> Upon motion and for good cause shown, the commission may order substitution of parties, except that in the case of death of a party, substitution may be ordered without the filing of a motion.

11

Repl.),[9] which states that the dissolution of a nonprofit corporation does not "[a]bate or suspend a proceeding by or against the corporation on the effective date of dissolution." Lanai Resorts argues in response that the effect of administrative dissolution, as opposed to voluntary dissolution, is governed by HRS § 414D-249, which limits post-dissolution activities to "those necessary to wind up and liquidate its affairs under section 414D-245 . . . ." HRS § 414-249(c). However, HRS § 414D-245(b) does not, as Lanai Resorts asserts, set forth activities in which voluntarily dissolved corporations may participate in addition to those necessary to wind up and liquidate, which would mean that HRS § 414D-249 acts as a limitation on the types of activities in which an administratively dissolved corporation may participate. Instead, HRS § 414D-245(b) enumerates certain rights and procedures that are not affected by or precluded by dissolution. Thus, HRS § 414D-245(b)(5) is applicable to administratively dissolved corporations through HRS § 414D-249(c). LSG, as an administratively dissolved corporation, was permitted to continue its involvement in this litigation under HRS § 414-245(b)(5).

Practically speaking, Lāna'ians for Sensible Growth, the corporation in existence since 2008, is substantially similar to LSG, the corporation in existence prior to 2004. The President of Lāna'ians for Sensible Growth, Donovan Kealoha, testified in a declaration, "Lāna'ians for Sensible Growth, except for the new nomenclature in its label, has continued to

---

[9] HRS § 414D-245(b)(5) provides:

§414D-245 Effect of dissolution.

. . . .

(b) Dissolution of a corporation does not:

. . . .

(5)    Abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution[.]

operate in exactly the same role as 'Lanaians for Sensible Growth,' with essentially the same board membership except for the addition of four new members as part of its evolution as a community advocacy group." While Lāna'ians for Sensible Growth must officially substitute itself as a party in this litigation to become the real party in interest, HRS § 414D-245(b)(5) allows the members of LSG, who have continued to be involved with this litigation or who have been replaced by new members, to continue their role in the proceedings despite LSG's administrative dissolution.

Lanai Resorts' contention that HRS § 414D-249 prevents LSG from continuing litigation because it is not an activity necessary to wind up and liquidate its affairs is without merit. The circuit court did not err in denying Lanai Resorts' motion to dismiss.

## C. 1996 Order

Lanai Resorts argues the circuit court erred when it vacated the LUC's 1996 Order because its findings "could [not] provide the [circuit] court with the definite and firm conviction that a mistake had been made necessary to allow the LUC's decision to be overturned." Lanai Resorts takes issue with three specific findings by the circuit court supporting its decision to vacate the 1996 Order: (1) the LUC did not abide by the mandate provided by the supreme court; (2) the LUC did not follow its own procedures; and (3) LSG had not been given a full and fair opportunity to have its evidence heard and considered.

In its 2004 decision in this case, the Hawai'i Supreme Court held:

> In the present case, the LUC has not provided sufficient "findings or conclusions that would enable meaningful review of" whether [Lanai Resorts] has violated the prohibition against [the] use of potable water in Condition No. 10. HRS § 91-14 provides that, upon review of an agency decision, an appellate court may "remand the case with instructions for further proceedings.
>
> Accordingly, we remand the issue of whether [Lanai Resorts] has violated Condition No. 10 by utilizing potable water from the high level aquifer, to the court, with instructions to remand the case to

13

> the LUC for clarification of its findings and
> conclusions, or for further hearings if necessary.

Lanai Co., 105 Hawai'i at 316, 97 P.3d at 392 (citation omitted).

The question on appeal is whether the circuit court erred in vacating the LUC's 2010 Order because the LUC's decision was made upon unlawful procedure following the supreme court's remand instructions. HRS § 91-9 (2012 Repl.), requires that "in any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice." HRS § 91-9(a). "Opportunities shall be afforded [sic] all parties to present evidence and argument on all issues involved." HRS § 91-9(c); see Application of Kauai Elec. Div. of Citizens Utils. Co., 60 Haw. 166, 182, 590 P.2d 524, 536 (1978) (holding that a hearing satisfied HRS § 91-9 where "all parties had been given ample opportunity to obtain and present all their evidence, to present testimony, both written and oral, to cross examine witnesses, and to argue the issues on the merits before the Commission.").

The supreme court in Hou recently discussed the importance of due process protections for parties in adjudicatory proceedings before administrative agencies in Hou. Regarding contested case hearings, the supreme court stated:

> A contested case hearing is similar in many respects to a trial before a judge: the parties have the right to present evidence, testimony is taken under oath, and witnesses are subject to cross-examination. It provides a high level of procedural fairness and protections to ensure that decisions are made based on a factual record that is developed through a rigorous adversarial process.

Hou, 136 Hawai'i at 380, 393 P.3d at 228. "[T]he manner in which the justice system operates must be fair and must also appear to be fair." Hou, 136 Hawai'i at 389, 363 P.3d at 237 (citing Sifagaloa v. Bd. of Trs. of Emps.' Ret. Sys. of State of Hawaii, 74 Haw. 181, 190, 840 P.2d 367, 371 (1992)). "Fundamentally, in the justice system, 'justice can perform its high function in the best way only if it satisfies the appearance of justice.'" Hou, 136 Hawai'i at 389, 363 P.3d at 237 (quoting Sifagaloa, 74 Haw. at 189, 840 P.2d at 371).

Following the supreme court's remand in this case, the

LUC issued a Second Prehearing Order on May 26, 2006 scheduling hearings at which the parties could address specific issues relating to the supreme court's remand instructions. The LUC scheduled the hearings for June 7, 8, and 9, 2006. At the hearing, the LUC heard witness testimony from Lanai Resorts, OP, and the County. LSG had scheduled their expert witness, William Meyer (**Meyer**), a private hydrology consultant, to appear by video on June 9, but the LUC canceled the final day of the hearing for lack of quorum.

At a May 18, 2007 hearing, Commissioner Formby explained the need to appoint a hearings officer: "Given the protracted history and extensive litigation in this matter and the importance of this matter on remand from the [Hawai'i] Supreme Court, I believe it would be more efficient to assign the conclusion of this matter to a hearing officer." Commissioner Formby added, "I also believe that the assignment of this matter to a hearing officer would allow for a more streamlined and efficient timeframe within which testimony and evidence could be collected on this matter."

Before the commissioners voted to approve the use of a hearing officer, counsel for LSG reminded the LUC that it had heard all parties' testimony except for LSG's testimony. Counsel for LSG stated, "I think we would be prejudiced if, in fact, the record stands as it is with everybody else's testimony but not ours on these critical issues. We would at least, at the very least want to have [Meyer] to testify if you're going to close that record." The deputy attorney general responded on behalf of the LUC,

> [W]e're not closing the record. I think you would have an opportunity to rebut the motion or oppose the motion based on those arguments. We would only, the [LUC] would only consider the motion if there are no material issues of fact that would preclude them from making the decision.

Effectively, however, the LUC did not accept any more testimony on the contested cases.

Meyer was included on LSG's list of witnesses to be submitted to the LUC for the purpose of testifying about the

"standards of potability," "affects [sic] of pumping water from high level aquifer in Lanai," and "water use in Lanai."[10] This testimony was directly relevant to the issue on remand from the Hawai'i Supreme Court, "whether [Lanai Resorts] has violated Condition No. 10 by utilizing potable water from the high level aquifer," Lanai Co., 105 Hawai'i at 316, 97 P.2d at 392, and to the LUC's subsequent finding that "there's no basis to conclude that there was a violation of Condition No. 10." Additionally, Meyer's testimony was relevant to rebutting the testimony of Lanai Resorts' expert Tom Nance. At the hearing, counsel for LSG objected to the testimony of Lanai Resorts' expert Tom Nance, stating, "This new testimony is being delivered orally today and all the technical data is a denial of my client's right to be able to effectively cross-examine with the assistance of our expert."

Lanai Resorts argues that because the LUC in 2010 could not determine what "Condition No. 10" meant when it was drafted in 1991, there was no need for the additional contested case hearings and thus, the LUC did not deviate from the post-remand process. Lanai Resorts, however, misconstrues the remand from the supreme court. The purpose of the remand was not, as Lanai Resorts purports, "to force the LUC to clarify what was intended by Condition No. 10 and then, assuming the condition was sufficiently clear, to determine whether Lanai Resorts had violated it." Instead, the LUC was given a clear task by the supreme court: clarify its findings and conclusions regarding whether Lanai Resorts violated the prohibition against the use of potable water in Condition No. 10, or to conduct further hearings if the LUC found additional hearings necessary. Lanai Co., 105 Hawai'i at 316, 97 P.2d at 392.

Because the LUC decided, in its discretion, to hold hearings to address the issues remanded by the supreme court, the hearings became subject to the requirements of HRS § 91-9. See

---

[10] A transcript of Meyer's former testimony before the LUC was submitted to the LUC as Exhibit LSG-017-R.

Bush v. Hawaiian Homes Comm'n., 76 Hawai'i 128, 135, 870 P.2d 1272, 1279 (1994).

The LUC entered its 2010 Order based on "having reviewed [the OP's] Motion and Revised Motion, [Lanai Resorts'] Motion, the various pleadings filed by the parties and the record in this proceeding, and having heard public testimony and arguments of counsel for [the OP], [Lanai Resorts], Maui County, and counsel for LSG," noticeably leaving out public testimony for LSG. Therefore, we come to the same conclusion as the circuit court: "the 'further hearings' LUC conducted pursuant to [the Second Prehearing Order] dated May 26, 2006 did not result in LSG being afforded a full and fair opportunity to have its evidence heard and considered post-remand." "Such a process does not satisfy the appearance of justice[.]" Hou, 136 Hawai'i at 391, 363 P.3d at 239.

We affirm the circuit court's decision to vacate the LUC's 2010 Order on the grounds that the LUC's decision was made upon unlawful procedure. See HRS § 91-14(g)(3).

## IV. CONCLUSION

The Final Judgment entered on March 19, 2013 in the Circuit Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, March 21, 2016.

LindaLee K. (Cissy) Farm
(Brett R. Tobin with her
on the briefs)
(Goodsill Anderson Quinn & Stifel)
for Appellee-Appellant.

Presiding Judge

David Kopper
(Alan T. Murakami on the briefs)
(Native Hawaiian Legal Corporation)
for Appellant-Appellee.

Associate Judge

Associate Judge

17